McManimon, Scotland & Baumann, LLC
427 Riverview Plaza
Trenton, NJ 08611
Andrea Dobin
Ross J. Switkes
*Counsel to Andrea Dobin,*
  *Chapter 7 Trustee*

## UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| In re: | Case No. 17-27879 (KCF) |
| LISA FRYE, | Chapter 7 |
| Debtor. | Honorable Kathryn C. Ferguson, Chief, U.S.B.J. |

### CERTIFICATION OF ANDREA DOBIN, CHAPTER 7 TRUSTEE, IN OPPOSITION TO MOTION FOR RELIEF FROM AUTOMATIC STAY FILED BY SPECIALIZED LOAN SERVICING, LLC

**ANDREA DOBIN**, of full age, certifies as follows:

1. I serve as the Chapter 7 Trustee in the bankruptcy proceeding of Lisa Frye (the "Debtor"). I submit this Certification in opposition to the Motion of Specialized Loan Servicing as Servicer for MEB Loan Trust IV ("SLS") for relief from the automatic stay ("Motion") (Docket No. 31) to prosecute a foreclosure action as it relates to the real property jointly owned by the Debtor and her ex-husband, James Frye ("Mr. Frye"), located at 1115 Gully Road, Wall Township, New Jersey ("Property"). I am familiar with the facts set forth herein.

**Background**

2. On or about April 11, 1998, the Debtor and Mr. Frye were married.

3. On November 12, 1998, the Debtor and Mr. Frye purchased the Property.

4. On or about March 4, 2011, the Debtor and Mr. Frye separated and subsequently divorced in or about 2013.

5. In connection with their divorce, on or about January 6, 2013, the Debtor and Mr. Frye entered into a Memorandum of Understanding (the "Memorandum") that resolved certain issues in connection with their divorce. The Memorandum provided, *inter alia*, that the marital property included the Property and Debtor's interest in the real property located at 300 First Avenue, Spring Lake, New Jersey (the "Spring Lake Property").

6. Upon information and belief, there are no mortgages against the Spring Lake Property. The Debtor holds a $1/9^{th}$ interest in the Spring Lake Property. To my knowledge, Mr. Frye never had an ownership interest in the Spring Lake Property. The Debtor's interest in the Spring Lake Property has significant value as it is worth approximately $1 million.

7. The Memorandum provided that the Property was to be sold "within two (2) years of the divorce date." I am unaware of the actual divorce date but presume it was in 2013.

8. The Internal Revenue Service ("IRS") assert Federal Tax Liens in an aggregate amount exceeding $80,000 that encumber both the Spring Lake Property and the Property.

9. The Memorandum provided that all liabilities, presumably inclusive of the liabilities due to the IRS and mortgages on the Property, were assumed by Mr. Frye.

10. On August 31, 2017, the Debtor filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code. On Schedule A/B, she disclosed an interest in the Property. On Schedule D, she disclosed two (2) mortgages against the Property: (i) a first mortgage of Nationstar Mortgage in the amount of $374,273.28; and (ii) a home equity loan of Bank of America Home Loans in the amount of $98,859.91.

11. On September 1, 2017, I was appointed as Chapter 7 Trustee for the Debtor.

12. The Debtor does not reside at the Property. Mr, Frye, however, resides at the Property.

13. I intend on selling the Debtor's interest in the Spring Lake Property for the benefit of creditors pursuant to the obligations imposed on me pursuant to 11 U.S.C. § 704 but cannot do so as a result of the IRS liens. The co-owners are interested in purchasing the Debtor's interest, but will only do so if the IRS lien is removed from the Spring Lake Property. In sum, the Debtor's interest is encumbered as a result of Mr. Frye's failure to comply with the terms of the Memorandum.

14. As a result of the need to satisfy the IRS liens through the sale of the Property, on October 25, 2018, I caused to be filed a complaint against Mr. Frye seeking authority to sell his interest in the Property, together with the Estate's interest, pursuant to 11 U.S.C. § 363(h).

15. The parties have participated in two (2) mediation sessions. The negotiated settlement was dependent upon the Debtor's receipt of a release of the IRS liens without payment through an innocent spouse application submitted to the IRS.

16. The Debtor's innocent spouse application was denied. She has appealed.

17. To the extent she is successful on her appeal of the denial of innocent spouse application, she will no longer be liable for the amounts sought from the IRS, and the liens will no longer encumber the Spring Lake Property. If she is unsuccessful on the appeal, I will pursue judgment against Mr. Frye and authority to sell the Property to satisfy the IRS liens.

18. Notwithstanding, Mr. Frye's counsel has advised that he intends to continue residing at the Property long-term and is seeking to resolve any issues with SLS raised in the Motion.

**The Motion**

19. On January 17, 2020, SLS filed the Motion seeking authority to vacate the automatic stay to permit it to prosecute a foreclosure action concerning the Property. The Motion should be denied for the following deficiencies.

20. First, the Motion reflects unpaid interest from January 3, 2007 to December 30, 2019 in the amount of $13,524.34, but no amounts due for late charges and/or attorney's fees. I question why SLS filed the Motion at this stage if it appears that the Debtor and/or Mr. Frye are not in default. Presumably, if there was a default, there would be late charges due and owing, but here, there are not.

21. Second, in connection with the equity analysis, SLS relies on a valuation in the amount of $472,686 provided by the Debtor in her Schedules on **August 31, 2017**. Zillow.com reflects an approximate current fair market value of $580,662 as of February 3, 2020. Moreover, I obtained my own comparable market analysis on July 19, 2018 that reflects a value of $550,000 as of that date. As a result, the valuation utilized by SLS is stale and understated. It has not met its burden of proof.

22. Third, the first mortgage balance provided by SLS is also as of **August 31, 2017** and thus, equally stale. In fact, SLS again simply relied on the Debtor's Schedules.

23. Plain and simple, the Motion is deficient in that it relies on information that is over two (2) years old. If a current fair market value is utilized in the equity analysis, there is equity after payment of the mortgages and a five percent (5%) broker's commission. For that reason alone, I respectfully request that it be denied.

24. Importantly, however, the equities of this case also weigh in favor of denial of the Motion. The Debtor's creditors should not be deprived of the equity in this Property or the

Spring Lake Property due to any default of Mr. Frye. Mr. Frye was obligated under the Memorandum to liquidate the Property within two (2) years of the divorce date; which he has not done. The Memorandum also makes him liable for the debt due to the IRS and on account of the mortgages, which he has not satisfied. If the settlement structure I have worked out cannot be consummated, I must be able to sell the Property (in conformance with the Memorandum) to satisfy the IRS lien for the benefit of creditors. Granting stay relief and allowing the Property to be foreclosed upon places that strategy in jeopardy.

25. For these reasons, I respectfully request that the Motion be denied.

I hereby certify that the above statements made by me are true. I am aware that if any of the foregoing statements made by me are willfully false, I am subject to punishment.

Dated: February 4, 2020          By:    */s/ Andrea Dobin*
                                                         ANDREA DOBIN